PIERCE, Judge.
Appellant Olin D. Shaw appeals to this Court from a judgment of conviction entered against him by the Pinellas County Circuit Court, following a jury trial wherein he was found guilty upon an information charging him with breaking and entering a building other than a dwelling house with intent to commit petit larceny.
The sole point urged here for reversal is that the trial Court erred in denying defendant Shaw’s requested jury instruction relative to temporary insanity. No written request for instructions was filed, but following final arguments to the jury and prior to the Court’s charge to the jury, counsel for defendant orally requested the Court to include in his instructions the passage taken from the 5th headnote in Britts v. State, 1947, 158 Fla. 839, 30 So.2d 363. When the oral request was made, the Court reminded defense counsel that “the rules require that if you have any instructions that you wish the Court to give they should be submitted in writing. But go ahead.” After considering the requested instruction, the Court stated it would “not give the instruction in the form as requested” by defense counsel. Counsel then asked the Court, “will the Court waive written instructions?”, to which the Court replied: “Yes. You don’t have to make any objection. Your objection is preserved.”
It is true, as this Court said in Egantoff v. State, Fla.App.1968, 208 So.2d 843, that reversible error cannot usually be predicated upon the failure or refusal to give a jury instruction in the absence of a written request therefor, but even in Egantoff we indicated that a verbal request for an instruction may under some circumstance have “qualified as a formal request”. In any event, the trial Court here treated it as a “formal request” and it would therefore be perhaps unfair, under such circumstances, for defendant to be deprived of this Court’s consideration of the propriety of the instruction in question. We therefore proceed to the merits of the orally requested instruction.
The instruction requested by counsel was as follows:
“In determining whether the accused was so mentally deranged at the time of commission of act with which he was charged with committing that he was not criminally responsible for his act, it was immaterial whether temporary insanity was immediate consequence of voluntary intoxication or was the deferred consequence of voluntary intoxication.”
It was not error to refuse the foregoing charge. In the first place, the language of the oral request was taken, not from the body of the opinion in Britts but from one of the headnotes to the opinion, which was no more than the observation of an editorial writer of the publishing company. A reference to the opinion itself in *621 Britts discloses that the Supreme Court actually used the following language:
“ * * * it could not make much difference whether the temporary insanity is the immediate consequence of voluntary intoxication or is the deferred consequence of voluntary intoxication because the rule appears to be that where a person is too intoxicated to entertain or be capable of forming an essential or particular intent such intent cannot exist and consequently the offense of which it is a necessary element cannot be perpetrated.” (Emphasis supplied.)
Nowhere in the orally requested instruction was there any language as to “lack of intent” flowing from “insanity due to intoxication”. The latter is merely the cause; the former is the effect. And in any given case the cause may produce the effect or again it may not. If it does, it would have a bearing upon the nature or degree of the offense charged; otherwise it would not. And it would in all cases he for the jury to determine, in the light of all the evidence adduced and under appropriate instructions by the Court, including the italicized language omitted from the opinion in Britts.
Also, under the evidence in the case, it was not reversible error to decline to give the requested charge. Young v. State, Fla.App.1964, 162 So.2d 297, was a 3rd District Court case involving a conviction upon the same criminal charge as here, breaking and entering a building with intent to commit a misdemeanor. In that case, as here, “the defendant contended that he was too intoxicated to have the capacity to form a specific intent to commit a misdemeanor, if in fact he did break into the premises.” The 3rd District Court found that the record in that case—
“ * * * reveals that the defendant had a most accurate knowledge and recollection of all events immediately preceding his being found in the premises involved after closing hours and immediately after his arrest. At the time he was apprehended he was wearing surgical gloves, there was a crowbar in the immediate vicinity, he had a flashlight in his possession, and he 'was standing on a loaded revolver which was registered in his name. The circumstances surrounding his apprehension and his ability to recollect all events except the actual breaking, support the finding of guilt * *
In the case sub judice, the record here reveals that Shaw was first observed by the officers through a plate glass window kneeling down on the inside of the building hammering on a cigarette machine; when the officers opened the door he resisted their entrance by trying to keep the door closed and even continued to resist after the officers got inside; he had burglar tools in his possession, including a hammer with which he was trying to knock the cigarette machine open; he had in his pockets $22.87, consisting of nickels, pennies, dimes, quarters, half dollars, also some money wrappers and two rolls of pennies that had Michigan Bar (the place in question) written on them; at the rear of the building a window leading to the bathroom had been broken out; and all of this happened at about 2:30 in the morning. The officers stated he had been drinking but not to such extent they would have arrested him for intoxication. In fact, the officers had encountered him about an hour before on a nearby street corner waiting, as he told them, for his girl friend to come out of the bar across the street, and the officers did not arrest him. Shaw testified and remembered with surprising clarity being at his sister’s house, going in her ice box, drinking a quart of beer, then drinking another quart, and then calling a cab “to bring me up some whiskey”, then drinking the whiskey, but could not remember being in the Michigan Bar not too long afterwards, nor how he got there.
The foregoing compares favorably with what was before the 3rd District Court in Young. It was for the trier of the facts, here as well as there, to deter *622 mine if he knew and meant what he was doing at the time of his arrest. The verdict bespeaks the finding of the jury in this respect. See also Askew v. State, Fla.1960, 118 So.2d 219.
There being no other contention of error, the judgment appealed from is—
Affirmed.
LILES, Acting C. J., and McNULTY, J., concur.