455 So.2d 1080 (1984)
Raymond T. STREETMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2368.
District Court of Appeal of Florida, Second District.
September 7, 1984.
*1081 Jerry Hill, Public Defender, Bartow, and Deborah K. Brueckheimer, Asst. Public Defender, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Judge.
Appellant and three accomplices allegedly robbed a bank teller of over $7000 by threatening him with a plastic-like substance, which they identified as a bomb, and a remote control television channel selector which had been "rigged up" to resemble a radio command detonator. We are called upon to determine whether the evidence presented at trial was legally sufficient for the jury to conclude that this bomb device constituted a weapon, as defined under section 790.001(13), Florida Statutes (1983).[1]
During appellant's trial for robbery with a deadly weapon, the victimized bank teller testified that one of appellant's accomplices approached the bank's commercial drive-through window on a bicycle and deposited an envelope in the window's transaction box. The envelope contained what the teller described as a small, triangular piece of old, hard plastic, pinkish to murky-clear in color, with various colored dots in the plastic. An accompanying note identified the plastic object as a bomb which would be detonated unless the teller relinquished the money in his cash drawer. The bicycling bandit then displayed what appeared to be a remote control detonating device, thus prompting the teller to comply with the note's demand without further hesitation.
Two of the participants in the robbery testified as witnesses for the state, relating their understanding of how the bomb and bogus detonator had been constructed. Neither witness had actually assembled the bomb or detonator nor been present during the construction of either device. Both had been advised by the individual entrusted with the construction assignment, however, that the bomb was comprised of nine parts Vaseline petroleum jelly and one part potassium chlorate, a combination which, according to the third participant, had been described as "explosive" in an underground weapons manual or "terrorist magazine." Neither witness had any independent knowledge concerning the actual chemical composition of the bomb or the explosive propensity of a Vaseline/potassium chlorate combination. Both realized, however, that the bomb could not be detonated by the device displayed to the teller, which was merely a remote control television channel selector, modified to resemble a detonator through the addition of a battery and a few protruding wires. When asked to describe the physical appearance of the bomb, one witness stated that it was a pliable, green substance, while the other witness described it as a flexible, yellowish chemical compound. Obviously, these descriptions differed substantially from that given by the bank teller.
The only other testimony concerning the bomb came from two social acquaintances of appellant who had heard details of the accomplished "bank caper" from appellant as he drank and "traded stories" with them in their home. One witness, who admittedly had been drinking during his conversation with appellant, testified that appellant claimed to have robbed a bank with an *1082 active, homemade bomb. The other witness, who had not been drinking, recalled only that appellant described the bomb as being made of tape and possibly a coat hanger. The second witness did not recall appellant's having described the bomb as active.
At the close of the state's case, defense counsel moved for judgment of acquittal on both the charged offense of robbery with a deadly weapon and the lesser included offense of robbery with a weapon. After careful consideration, the trial court ultimately granted the motion as to the charged offense alone, agreeing that the state's failure to establish the explosive propensities of the bomb left its evidence insufficient to show that the device was "capable of causing death or great bodily harm." The court refused, however, to reduce the charge to simple robbery, concluding instead that the evidence was sufficient for the jury to find that the fake bomb constituted a "chemical weapon or device" as described in section 790.001(13). Additionally, the court concurred in the state's assessment that the use of an alleged bomb to threaten the victim enhanced the seriousness of the offense beyond that of simple robbery.
In instructing the jury on robbery with a weapon, the trial court deleted the standard jury instruction's definition of weapon as "any object that could be used to cause death or inflict serious bodily harm," in order to reconcile the instruction with the court's previous denial of defense counsel's motion for judgment of acquittal on that offense. The court acknowledged, however, that the state's evidence was insufficient to establish that the bomb was a weapon as described in the standard jury instruction's definition. Over defense counsel's objection, the trial court substituted the definition of "weapon" set forth in section 790.001(13) in lieu of the deleted language. The jury subsequently found appellant guilty of robbery with a weapon, and this timely appeal ensued. We reverse.
As a general rule, Florida courts have utilized the statutory definition of "weapon" provided in section 790.001(13) to determine whether a particular object constitutes a "weapon" for purposes of section 812.13(2)(b). See, e.g., Depasquale v. State, 438 So.2d 159, 160 (Fla. 2d DCA 1983); Hartman v. State, 403 So.2d 1030, 1031 (Fla. 4th DCA 1981); McCray v. State, 358 So.2d 615, 617 (Fla. 1st DCA 1978). Under this approach, a device used in the course of a robbery qualifies as a "weapon" only if it is either one of the objects specifically delineated in the statute or a "deadly weapon." Depasquale, 438 So.2d at 160; McCray, 358 So.2d at 617. As the trial court recognized, and as the record makes clear, the state's proof failed to establish that the fake bomb displayed to the teller constituted a "deadly weapon," i.e., "one likely to produce death or great bodily injury." (Emphasis added), Goswick v. State, 143 So.2d 817, 820 (Fla. 1962); McCray, 358 So.2d at 617; Fla.Std. Jury Instr. (Crim.) Robbery. Although the trial court apparently concluded that the fake bomb could be classified as a "chemical weapon or device," we cannot agree with that
It appears clear that each of the devices enumerated in section 709.001(13) has the actual ability to cause death or inflict bodily harm. Consequently, we believe that "chemical weapon or device" should be construed to include only those objects which, likewise, have a capability to injure. The standard jury instruction, which the trial court rejected, reflects this construction. As the trial court conceded, the state's second and third-hand evidence concerning the composition of the bomb and its explosive characteristics was simply insufficient to permit the jury lawfully to conclude that the device possessed any capacity to inflict harm. Accordingly, we believe that the trial court erred in denying appellant's motion for judgment of acquittal as to the offense of robbery with a weapon.
In reaching our decision, we are not unaware of federal authority which has *1083 held fake bombs to constitute "dangerous weapons" under 18 U.S.C. § 2113(d).[2]See, e.g., United States v. Shannahan, 605 F.2d 539, 541-42 (10th Cir.1979); United States v. Marx, 485 F.2d 1179, 1185 (10th Cir.1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); United States v. Cooper, 462 F.2d 1343, 1345 (5th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 452, 34 L.Ed.2d 303 (1972); United States v. Beasley, 438 F.2d 1279, 1282-83 (6th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 124, 30 L.Ed.2d 110 (1971). But see Bradley v. United States, 447 F.2d 264, 275 (8th Cir.1971) (to establish a violation of section 2113(d), prosecutor must show that accused intended to create reasonable apprehension on part of victim and possessed actual capability to cause death or physical harm). While these courts have based their decisions on a variety of legal explanations, which are applicable only to the federal statute, some have predicated their holding on a statutory construction which identifies a "dangerous weapon" as one which places the victim in reasonable expectation of death or serious bodily injury. See Marx, 485 F.2d at 1185; Beasley, 438 F.2d at 1282-83. However, as our sister court in the Third District noted in M.R.R. v. State, 411 So.2d 983 (Fla. 3d DCA 1982), where the instrument is not a firearm as statutorily defined, Florida courts apply an objective test and look to the nature and actual use of the instrument and not to the subjective fear of the victim or intent of the perpetrator. Id. at 984. See also Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984). Although the Third District made this observation while addressing a starter gun's status as a deadly weapon under the aggravated assault statute, we believe that this assessment applies equally to the identification of weapons under the robbery statute. See McCray, 358 So.2d at 617. Consequently, we are not persuaded by the federal cases cited above.
For the reasons previously discussed, we reverse appellant's judgment and sentence for robbery with a weapon and remand to the trial court for entry of judgment and sentence for simple robbery under section 812.13(2)(c). Because the court necessarily must resentence appellant, we need not address the court's departure from the guidelines with regard to the sentence presently before us.
REVERSED and REMANDED. Appellant is to be present for resentencing.
RYDER, C.J., and HOBSON, J., concur.
NOTES
[1] Section 790.001(13), provides: "`Weapon' means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife."
[2] Section 2113(d) provides:

(d) Whoever, in committing, or in attempting to commit, any offense, defined in subsections (a) and (b) of this section, assaults any person or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.