564 So.2d 1153 (1990)
Salvadore ARROYO, Appellant,
v.
STATE of Florida, Appellee.
No. 89-0729.
District Court of Appeal of Florida, Fourth District.
July 5, 1990.
*1154 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Lynn Waxman, Asst. Atty. Gen., West Palm Beach, for appellee.
HERSEY, Chief Judge.
Salvadore Arroyo appeals his conviction of attempted armed burglary. We reverse the conviction and sentence for the reasons that follow.
Arroyo was discovered in an apartment in the early morning hours by the two female occupants of the apartment. In his hands he held a T-shirt, a flashlight and an open pocket knife. He made no threatening gestures; he asked and was given permission to leave. There was testimony that he did not appear intoxicated. His excuse for being in the apartment was that he mistook it for the home of a friend. He left and was found asleep in a laundry room less than an hour later.
The first issue is whether a pocket knife is a "dangerous weapon" within the meaning of section 810.02(2)(b), Florida Statutes (1989). That section provides that a burglary is a first-degree felony where the offender "is armed, or arms himself within such structure ... with ... a dangerous weapon." We conclude that a pocket knife may be a dangerous weapon within the meaning of the statute, but that it was not on the facts of this case.
The term "dangerous weapon" is not defined in chapter 810. The term "weapon" is defined in section 790.001(13), Florida Statutes (1989) as: "any dirk, metallic knuckles, slingshoot, billy, teargas gun, chemical weapon, or device, or other deadly weapon except a firearm or a common pocketknife."
Although the first paragraph of section 790.001, which provides that the definitions contained therein are to apply throughout chapter 790, might appear as an implied limitation on their applicability elsewhere, we discern no rational basis for such a limitation. In fact, "[a]s a general rule, Florida courts have utilized the statutory definition of `weapon' provided in section 790.001(13) to determine whether a particular object constitutes a `weapon' for purposes of section 812.13(2)(b) [the armed robbery statute]." Streetman v. State, 455 So.2d 1080, 1082 (Fla. 2d DCA 1984). See also Hartman v. State, 403 So.2d 1030 (Fla. 4th DCA 1981).
In Hartman we explained that "we do not consider [the language in the first paragraph of section 790.001] to limit use of the definitions exclusively to chapter 790, particularly where common sense dictates that a definition set forth there may have perfectly reasonable application elsewhere." Id. at 1031.
Similarly in this case we see no reason not to look to the definition in section 790.001(13) in applying section 810.02(2)(b). See Depasquale v. State, 438 So.2d 159 (Fla. 2d DCA 1983); McCray v. State, 358 So.2d 615 (Fla. 1st DCA 1978).
If, then, a "pocketknife" is expressly excluded from the term "weapon," does that mean that a pocketknife can never be a "weapon" or a "dangerous weapon" for purposes of applying statutes employing those terms. We think not and follow the lead of our sister court in holding that it depends upon the use made of the pocketknife and other facts involved in a particular case. The third district, in State v. Nixon, 295 So.2d 121 (Fla. 3d DCA 1974), addressed the question whether a common pocket knife could be a "deadly weapon" since it was expressly excluded from the enumerated weapons in section 790.001(13). In answering that question affirmatively, the third district noted that the legislature exempted common pocketknives from the definition of weapons in chapter 790 so that citizens would not be charged with a crime *1155 when carrying such knives for their own convenience and for useful purposes unrelated to criminal activity. The third district further noted, however, that common pocketknives could be deadly weapons when used in a manner likely to produce death or great bodily harm.
Thus, the pocketknife in this case could also be a dangerous weapon if it was used in a manner likely to produce death or great bodily injury. A review of the record indicates that such was not the case here.
The state inappropriately relies on Hardee v. State, 534 So.2d 706 (Fla. 1988), and State v. Dopson, 323 So.2d 644 (Fla. 4th DCA 1975), as dispositive of this issue on other grounds, but those cases are clearly distinguishable. Neither involved the issues we have dealt with here. It was the state's burden to prove beyond a reasonable doubt that Arroyo was carrying a "dangerous weapon." To do so in the context of a pocketknife required proof that it was used in a manner likely to cause death or great bodily harm. No such evidence was presented to the jury. Accordingly, we reverse on this issue. Upon remand Arroyo should be resentenced for the lesser offense of attempted burglary (without enhancement for having a "dangerous weapon").
Arroyo contends, as his second point on appeal, that his motion for judgment of acquittal should have been granted based upon lack of evidence on the element of intent to commit an offense. The motion suggested a reduction from burglary to the lesser-included crime of trespass.
In order to obtain a conviction for burglary, the state must prove two elements: (1) unauthorized entry or remaining in a structure or conveyance, and (2) a specific intent to commit an offense therein. § 810.02(1), Fla. Stat. (1989); Toole v. State, 472 So.2d 1174 (Fla. 1985); Ellis v. State, 425 So.2d 201 (Fla. 5th DCA), approved, 442 So.2d 213 (Fla. 1983).
The state's proof regarding the accused's specific intent will almost always be circumstantial since the state will rarely have direct proof as to the defendant's exact objectives, motives and intentions. Further, section 810.07, Florida Statutes (1989), provides that proof of stealthy entry is prima facie evidence of intent.
In order to resolve this issue this court must determine whether there was enough circumstantial evidence of stealthy entry to send the question to the jury. "A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." State v. Law, 559 So.2d 187, 188 (Fla. 1989). However, "[t]he state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." (Footnote omitted.) Id. at 189. The state points to the following evidence: that appellant entered the apartment in the middle of the night, that he was observed crawling around on the living room floor, that appellant stood over the couch looking at one of the women sleeping, and that moments after the unlawful entry appellant was observed to be in possession of a flashlight and a pocketknife.
The evidence introduced by the state is inconsistent with appellant's theory that he mistakenly entered the apartment. Therefore, it was a question for the trier of fact and the jury's decision should not be disturbed in light of the substantial evidence supporting it.
Appellant alternatively contends that he could not have formed the specific intent necessary to commit the crime of burglary because he was intoxicated at the time.
Voluntary intoxication is a valid defense to specific intent crimes. Gardner v. State, 480 So.2d 91 (Fla. 1985). In order to successfully assert the defense of voluntary intoxication, the defendant must show that he was too intoxicated to entertain or be able to form a specific intent. Shaw v. State, 228 So.2d 619 (Fla. 2d DCA 1969).
Appellant contends that the evidence in this case of his intoxication was overwhelming. He points to the testimony of Officer Eischen who testified that he had stopped the appellant in the area one half *1156 hour before the incident. The officer testified that appellant appeared to be under the influence of alcohol and told him that he was coming from a bar. Additionally, appellant points to his tripping over the telephone cord while in the apartment and his mistaking the women's apartment for his friend's apartment as mistakes an intoxicated person might make. Finally, appellant points to the fact that the officers found him passed out in the laundry room of another building twenty minutes after being chased out of the women's apartment.
However, as the state correctly points out, the appellant has failed to include the following facts: that Officer Eischen described him as under the influence but in good shape, that the two occupants, who had a conversation with him, testified that he was not intoxicated at the time.
Thus, there was substantial competent evidence to support the jury's finding that appellant was not too intoxicated to form a specific intent. Based on the foregoing, we affirm on this point.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
DOWNEY and WALDEN, JJ., concur.