662 So.2d 962 (1995)
Mack MIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1985.
District Court of Appeal of Florida, Fifth District.
September 15, 1995.
Rehearing Denied November 13, 1995.
*963 James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for appellee.
GRIFFIN, Judge.
Appellant, Mack Mims, appeals his conviction for attempted armed burglary of a dwelling[1] and resisting an officer without violence.[2] We affirm.
Appellant contends, inter alia, that because the knife he carried was a pocket knife and because there is no evidence that it had been used in a manner likely to cause death or great bodily harm,[3] he cannot be convicted under section 810.02(2)(b), Florida Statutes (1993) for an "armed burglary." Appellant relies for this proposition on Arroyo v. State, 564 So.2d 1153, 1155 (Fla. 4th DCA 1990). Arroyo does not stand for that proposition, however. Arroyo simply concludes that even a "common pocketknife," excluded from the definition of "weapon" in section 790.001(13), Florida Statutes (1993), can be a weapon if used as described in Arroyo. The real question is whether the knife carried by appellant in this case was a "dangerous weapon."
The knife was introduced in evidence at trial and during trial was variously described as a "large brown knife," "large knife" and "large folding pocketknife." The dissent concludes the knife could not be a "dangerous weapon" as a matter of law, apparently deeming it to be a "common pocketknife." Disagreeing with Arroyo, the dissent concludes it cannot be a "dangerous weapon" because of the definition of "weapon" found in section 790.001, which excludes a "common pocketknife." However, the meaning of the term "weapon" in Florida's criminal statutes is ultimately determined by the plain and ordinary meaning of the word. See State v. Houck, 652 So.2d 359, 360 (Fla. 1995). Moreover, no fair reading of Chapter 790 could lead to the conclusion that the legislature intended to exclude the possibility that a pocket knife could be a weapon by virtue of the definition of weapon "for purposes of" that chapter. § 790.001, Fla. Stat. (1993). The statute simply intends that a "common pocketknife" is not normally considered a weapon for the multiple salutary purposes of Chapter 790. Arroyo was correct in this respect. 564 So.2d at 1155.
But even if Arroyo were wrong, as the dissent contends, we would still affirm. The question whether this knife was a "common pocketknife" and, thus, incapable of being a weapon as a matter of law was not raised. Not all knives that fold are "common pocketknives" and not all knives that fit into a pocket are "common pocketknives." The jury was instructed that a dangerous weapon is "any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm." The jury heard testimony about the knife, observed the knife, followed the instructions it was given and found the defendant guilty of the offense of attempted burglary while armed with a dangerous weapon. There is no basis to reverse their decision.
AFFIRMED.
HARRIS, J., concurs.
COBB, J., dissents, with opinion.
COBB, Judge, dissenting.
Mims argues that the trial court erred in denying his motion for a judgment of acquittal *964 because there was insufficient evidence at trial to support his attempted armed burglary conviction.[1] The issue is: when does a pocketknife cease being an innocent item and become a "dangerous weapon" with regard to the burglary statute?[2] The state presented evidence at trial that after a brief chase and upon finding Mims hiding behind a hedge, the arresting officer conducted a pat down search which revealed a "large" pocketknife.
Mims relies on Arroyo v. State, 564 So.2d 1153, 1154 (Fla. 4th DCA 1990). In Arroyo, the defendant was charged and convicted of attempted armed burglary. The evidence showed that the defendant possessed a pocketknife but that, as here, he made no threatening gestures with it. In reversing the conviction for attempted armed burglary, the Fourth District held that a pocketknife is not a "dangerous weapon" with regard to attempted armed burglary unless it was used in a manner likely to cause death or great bodily harm. Mims asserts that without testimony that he used the pocketknife in such a manner, a judgment of acquittal should have been granted in regard to the charge that he was "armed" during the attempted burglary.
The state asserts that the Fourth District misapplied the definition of "weapon" in section 790.001(13), Florida Statutes (1993),[3] to the burglary statute in Arroyo. The state contends that the cases the Fourth District cited to support its definition of "dangerous weapon" were defining "deadly weapon"[4] as distinguished from "dangerous weapon." The state further argues that attempted armed burglary is more akin to attempted armed robbery than to assault with a deadly weapon.[5]
Most significantly, the state maintains the Fourth District's definition of "dangerous weapon" results in the merger of two distinct provisions of the burglary statute, sections 810.02(2)(a) and (b). Section 810.02(2)(a), provides that burglary is a life felony if the defendant commits an assault or battery on any person. Section 810.02(2)(b), provides that burglary is a life felony if a defendant is armed with a "dangerous weapon." Therefore, to employ the definition of "dangerous weapon" that the Fourth District uses in Arroyo necessarily merges the two subsections into one. A defendant, to be convicted *965 of armed burglary under Arroyo, would have to threaten the victim with the pocketknife or actually use it against someone. Arroyo is correct to the extent that the Fourth District looked to the definition of "weapon" in section 790.001(13), Florida Statutes, in considering whether a pocketknife constitutes a "dangerous weapon" under section 810.02(2)(b). The legislature has determined in section 790.001 that what it refers to as a "common pocketknife" does not constitute a weapon. The Arroyo court, however, erroneously engrafted upon section 810.02(2)(b) the proviso that a common pocketknife becomes a "dangerous weapon" where used "in a manner likely to cause death or great bodily harm." Arroyo, 564 So.2d at 1155. This interpretation, besides adding an additional element to subsection (2)(b), is completely unnecessary since subsection (2)(a) enhances the burglary to a life felony where the offender "makes an assault or battery upon any person." Thus, the legislature has expressly provided enhanced punishment where an offender assaults or batters a person in the course of the burglary, whether it be with his fists or a common pocketknife. The Arroyo court, however, reached the correct result when it held that the defendant, who simply possessed a pocketknife, was not guilty of armed burglary. The legislature did not intend for one simply carrying a common pocketknife on his person during a burglary to be guilty of a life felony. The majority opinion in this case is in conflict with the result in Arroyo.
In order to sustain the conviction under section 810.02(2)(b) it was the state's burden to establish that the defendant was armed with a "dangerous weapon." The state showed that the defendant carried on his person a "large folding pocketknife."[6] The state did not carry its burden of showing that the defendant possessed something other than a common pocketknife. In response to the majority's assertion that a jury issue was presented, there was no evidence adduced by the state for jury consideration in regard to this pocketknife being uncommon in any respect. The statute makes no distinction between large and small pocketknives, either of which may be common. Furthermore, no assault or battery was committed on any person during the attempted burglary, so that subsection (a) is not implicated in this case.
It was error for the trial court to deny the defendant's motion for judgment of acquittal as to the charge of attempted armed burglary. The defendant's conviction should be reduced to attempted burglary, and the cause remanded for resentencing.
NOTES
[1] § 810.02(2)(b), Fla. Stat. (1993).
[2] § 843.02, Fla. Stat. (1993).
[3] There was some evidence he had used the knife to try to effect entry, however.
[1] This issue was preserved for review. In moving for a directed verdict of acquittal, defense counsel argued:

Additionally, as to the armed portion of Count I, the pocket knife he was found holding, Officer Giammarinaro said he assumed it was used as a burglary tool, but according to the instructions as to that charge, armed must be a dangerous weapon and must be taken into account the manner in which it is used. It was not used, if at all, in this case to produce bodily harm. Officer Giammarinaro said it was used to pry the screen. But there was no evidence of that. The victim made no mention of any knife.
[2] Section 810.02(2), Florida Statutes (1993) reads:

(2) Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:
(a) Makes an assault or battery upon any person.
(b) Is armed, or arms himself within such structure or conveyance, with explosives or a dangerous weapon.
The term "dangerous weapon" is not defined in Chapter 810.
[3] Section 790.001 is contained in Chapter 790, Florida Statutes entitled "Weapons and Firearms" (dealing with the legal ownership and use of weapons and firearms). Subsection (13) provides:

(13) "Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
[4] See Arroyo v. State, 564 So.2d 1153, 1154 (Fla. 4th DCA 1990) (citing State v. Nixon, 295 So.2d 121 (Fla. 3rd DCA 1974)).
[5] The Florida Supreme Court, at least tacitly, agrees. In Hardee v. State, 534 So.2d 706 (Fla. 1988), it was held that the defendant could be convicted of armed burglary even where the defendant stole an unloaded gun during a burglary despite the defendant's assertion that an unloaded gun was not a dangerous weapon under the burglary statute. The supreme court rejected the defendant's assertion stating that this was not the intent of the legislature. Id. at 708. It is also significant to note that the decision in Hardee was the result of a conflict between district courts as to whether the gun must be ready to fire for an armed burglary conviction to stand. Id. at 707. See also State v. Baker, 452 So.2d 927, 929 (Fla. 1984) (holding that an armed robbery could be committed even without the victim's knowledge of the existence of a weapon).
[6] The arresting officer was asked at trial "And the knife that has been submitted into evidence, that is a pocketknife, correct?" The officer answered "Correct."