700 So.2d 370 (1997)
L.B., Appellant,
v.
STATE of Florida, Appellee.
No. 89424.
Supreme Court of Florida.
October 2, 1997.
*371 James Marion Moorman, Public Defender and Brad Permar, Assistant Public Defender, Tenth Judicial Circuit, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General; Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal L.B. v. State, 681 So.2d 1179 (Fla. 2d DCA 1996), which declared section 790.001(13), Florida Statutes (1995), unconstitutionally vague. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we reverse.

FACTS
Petitioner, a minor, was charged with and convicted of possessing a weapon on school property in violation of section 790.115(2), Florida Statutes (1995).[1] Authorities at petitioner's middle school discovered her in possession of a folding knife with a 3 3/4-inch blade and an approximate overall length of 8 ½ inches. At trial, the court considered whether petitioner's knife fit within the "common pocketknife" exception to the definition of "weapon" contained in section 790.001(13), Florida Statutes (1995). Section 790.001(13) provides:
"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
The trial court found that petitioner's knife was too large to be considered a "common pocketknife," and was therefore a "weapon" within the meaning of sections 790.001(13) and 790.115(2).[2] Accordingly, the trial court found appellant guilty of the violation.
On appeal, the Second District vacated the trial court's order and remanded the case for a new trial. L.B., 681 So.2d at 1180. The district court held that section 790.001(13) is unconstitutionally vague insofar as it excludes "common pocketknives" from the definition of "weapon." Id. The district court noted that any penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). The district court then concluded that the statute "impermissibly leaves the question of whether a specific pocketknife is or is not a weapon to the `whim of a jury,'" and that "the statute is not reasonably certain and fails to provide guidance to citizens who wish to follow a lawful course of conduct." Id.
After determining that the term "common pocketknife" was void for vagueness, the district court did not invalidate the entire statute. Rather, it held that the term "common pocketknife" would be excised from section 790.001(13) in accordance with the principle that a court is "obliged to preserve as much of the statute as is permissibly consistent with both the legislative intent and constitutional strictures." Id. at 1181. Thus, the district court determined that section 790.001(13) should be interpreted to read:
"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm.
Id. at 1181.

ANALYSIS
It is an established principle of our constitutional jurisprudence that a statute is considered vague if it "does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct." See State v. Muller, 693 So.2d 976, 977 (Fla.1997). While we agree that section 790.001(13) is not "a paradigm of legislative drafting," State v. Manfredonia, 649 So.2d 1388, 1390 (Fla. 1995), we believe that the term "common *372 pocketknife," as contained in the statute, does provide persons of ordinary intelligence with fair notice as to what constitutes forbidden conduct.
The legislature's failure to define the term "common pocketknife" in section 790.001(13) does not render that term unconstitutionally vague. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980) (where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense). Moreover, a court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term. See Gardner v. Johnson, 451 So.2d 477, 478 (Fla. 1984).
To that end, we note that Webster's defines "common" as: "known to the community; occurring or appearing frequently esp. in the ordinary course of events; of, relating to, or typical of the many rather than the few." Webster's Third New International Dictionary 458 (1986). Webster's defines "pocketknife" as "a knife with a blade folding into the handle to fit it for being carried in the pocket." Id. at 1747. From these definitions, we can infer that the legislature's intended definition of "common pocketknife" was: "A type of knife occurring frequently in the community which has a blade that folds into the handle and that can be carried in one's pocket." We believe that in the vast majority of cases, it will be evident to citizens and fact-finders whether one's pocketknife is a "common" pocketknife under any intended definition of that term. We need not be concerned with odd scenarios construing smaller but more expensive knives as "uncommon." As the United States Supreme Court has observed, "[s]uch straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the `void for vagueness' doctrine, and we will not indulge in it." United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975).
An analogous situation are those penal statutes which measure conduct by a "reasonable person" standard. See, e.g., Manfredonia, 649 So.2d at 1391 (rejecting a vagueness challenge to a statute imposing a duty upon any adult in control of an open house party to "take reasonable steps" to prevent the possession or consumption of alcohol or drugs by a minor at that party). Like statutes which impose a "reasonable person" standard upon the citizenry, the Legislature's use of the modifier "common" in section 790.001(13), while perhaps not a "model of clarity,"[3]see id., does appeal to the norms of the community, which is precisely the gauge by which vagueness is to be judged. See Muller, 693 So.2d at 977 (requiring statutes "give people of ordinary intelligence fair notice of what constitutes forbidden conduct").
We may assume, for the sake of argument, that in some peripheral cases it may not be clear whether a particular pocketknife is a "common" pocketknife. However, that reason alone is insufficient to strike a statute as unconstitutionally vague, for we have explained:
[L]ack of precision is not itself offensive to the requirements of due process. "... [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...."... "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense...."
Manfredonia, 649 So.2d at 1390 (quoting Roth v. United States, 354 U.S. 476, 491-92, 77 S.Ct. 1304, 1312-13, 1 L.Ed.2d 1498 (1957)). Moreover, even if judges and juries were prone to reach inconsistent conclusions as to which knives are "common pocketknives" under section 790.001(13), the statute still would not be rendered unconstitutional. *373 The United States Supreme Court has stated:
It is argued that because juries may reach different conclusions as to the same material, the statutes must be held to be insufficiently precise to satisfy due process requirements. But, it is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.
Roth, 354 U.S. at 492 n. 30, 77 S.Ct. at 1313 n. 30.
Since in the vast majority of cases it will be evident whether one's particular knife is a "common pocketknife," and because "all doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible," Department of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla.1991), we hold that section 790.001(13) is not void for vagueness.
As to the knife at issue here, we hold that petitioner's knife plainly falls within the statutory exception to the definition of "weapon" found in section 790.001(13). In 1951, the Attorney General of Florida opined that a pocketknife with a blade of four inches in length or less was a "common pocketknife." Op. Att'y Gen. Fla. 051-358 (1951). The knife appellant carried, which had a 3 3/4-inch blade, clearly fell within this range.[4] Accordingly, appellant's conviction is vacated as we find that the knife in question was a "common pocketknife" under any intended definition of that term.
The judgment of the district court of appeal is reversed. We remand this case to the Second District for proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., concur.
GRIMES, J., concurs with an opinion in which WELLS, J., concurs.
ANSTEAD, J., concurs specially with an opinion in which KOGAN, C.J., concurs.
GRIMES, Justice, concurring.
In view of the Attorney General's opinion and the absence of a more definitive description of a common pocketknife, I concur with the majority opinion. It occurs to me, however, that the legislature may wish to address this issue, particularly as it relates to the possession of pocketknives on school grounds. Even a four-inch blade can do a lot of damage.
WELLS, J., concurs.
ANSTEAD, Justice, specially concurring.
While I agree with the majority that L.B.'s knife is a "common pocketknife" as a matter of law, I write separately to express my belief that the statute at issue here is, contrary to the majority's analysis, unconstitutionally vague in its use of the word "common."
As noted by the majority, the general test to determine whether a statute is vague is whether the statute "does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct." Muller, 693 So.2d at 977. Most "persons of ordinary intelligence" presumably know what a "pocketknife" is. Yet the modifier "common" makes this otherwise clear concept nebulous and vague. Pocketknives are manufactured in an almost infinite variety of sizes and styles.[5] Determining which knives are "common" *374 cannot be done in a rational and consistent manner. The Fifth District has determined, for example, that "[n]ot all knives that fold are `common pocketknives' and not all knives that fit into a pocket are `common pocketknives.'" Mims v. State, 662 So.2d 962, 963 (Fla. 5th DCA 1995).
In 1951, the Attorney General of Florida opined that a folding knife with a blade of four inches in length or less is a "common pocketknife." Op. Att'y Gen. Fla. 051-358 (1951). In comparison, the trial court in the instant case ruled that L.B.'s knife, which had a 3 3/4 inch blade, was not a "common" pocketknife. Thus, it seems apparent in reality that "persons of ordinary intelligence", i.e., the Attorney General in 1951, and the trial judge here, may, indeed, differ as to what constitutes a "common" pocketknife. Moreover, since pocketknives with blade-lengths in excess of four inches are not uncommon (in that numerous such knives exist), the uncertainty does not lie exclusively in the "marginal" or "peripheral" cases referred to by the majority. Not only is there a difficulty in determining whether a particular knife is "common" as to its blade-length, but there doubtless exist smaller pocketknives that the Legislature did not intend to prohibit the possession of, yet could be considered "uncommon" in light of unique features such as gold inlays or titanium blades. Clearly then, it may not always be evident to "persons of ordinary intelligence" whether one's particular knife is a "common" pocketknife.
While the majority is correct in stating that "all doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible," Department of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla.1991), we also have held that "when there is doubt about a statute in a vagueness challenge, the doubt should be resolved in favor of the citizen and against the state." Brown v. State, 629 So.2d 841, 843 (Fla.1994).[6] For that reason, and because the statute "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" in all cases, and not just those that can be characterized as "marginal," see Bouters v. State, 659 So.2d 235, 238 (Fla.1995), I would hold that section 790.001(13) is unconstitutionally vague.

REMEDY
By excising the term "common pocketknife" from section 790.001(13), the Second District created a situation where citizens and fact-finders were left in the position of determining whether a particular pocketknife is a "deadly weapon" under the statute, rather than determining whether it is a "common pocketknife." In effect, the Second District removed, in an ex post facto manner, a statutory exception to a criminal statute that clearly advised our citizens that it was legal to possess a pocketknife. The courts cannot lightly excise such an exception, thereby subjecting our citizens to criminal prosecution for conduct that the legislature clearly intended to be protected. This cannot be an appropriate remedy where all agree the legislature has expressly excepted "common pocketknives" from the definition of "weapon." Moreover, since "the precision required of statutes must come from the Legislature," Brown, 629 So.2d at 843,[7] the fashioning of a "bright line legal test" to determine whether a particular pocketknife is "common" should also be left to the Legislature.
*375 We can learn from other state courts that have considered this issue. For example, the Oregon Supreme Court, in considering the meaning of an "ordinary pocketknife," has observed that:
Of the many varieties of knives, none has been a more constant or enduring companion to man than the pocket knife. Specimens of folding pocket knives have been discovered in Roman archeological sites, indicating that such knives were popular at least from the first century A.D. They have been manufactured for their utility as both instruments of labor and combat....
It is clear, then, that knives have played an important role in American life, both as tools and as weapons. The folding pocketknife, in particular, since the early 18th century has been commonly carried by men in America and used primarily for work, but also for fighting.
State v. Delgado, 298 Or. 395, 692 P.2d 610, 613 (1984). In another Oregon case, the Court of Appeals recognized that:
There are many types of pocketknives, with varying combinations of blades and sizes, handle styles and other features, designed for various uses and users. Some pocketknife features might have been designed primarily to make the knife more lethal when used against another person, but other features which would make one knife potentially more dangerous than another (such as the locking blade and the blade length of the knife involved here) are designed to make it useful for lawful purposes and possibly safer. The legislature is capable of clearly stating the scope of a prohibition against knives whose design creates unreasonable chances of unlawful use.
... A pocketknife which may be considered "ordinary" in one set of circumstances may be considered highly unusual or uncommon in other circumstances.[n.5]
[n.5] At some risk in the face of the statute [excluding the carrying of "ordinary pocketknives" from criminal prosecution], the author of this opinion carries with him in a pocket during every waking hour a device known as a "Swiss Army knife." It has two cutting blades, two screwdrivers, a can opener, a bottle opener, a wire stripper, scissors, an awl, a file, a Phillips screwdriver, tweezers, a toothpick (of imitation ivory!) and a 2½ inch long saw which can cut through a small tree limb in short order. It is seldom used as a knife. Ordinary? Illegal? Who knows?
State v. Pruett, 37 Or.App. 183, 586 P.2d 800, 802-03 (1978) (footnote omitted).
I believe the appropriate remedy to be that fashioned by the Court of Appeals of Oregon in State v. Harris, 40 Or.App. 317, 594 P.2d 1318 (1979). The court in Harris excised the term "ordinary" from a statute excluding from prosecution the possession of an "ordinary pocketknife" and left "pocketknife" as an exception. Id. at 1320.[8] As noted by the court in Harris:
Everybody can recognize and immediately name a knife with a folding blade that fits in a pocket a "pocketknife" and until a defendant arrives with a folding machete and a long pocket, the term is not likely to be a primary cause of concern.
594 P.2d at 1320. To be sure, "pocketknife" is a fairly clear concept that can be looked up in a dictionary.[9] The term is essentially taken to mean any knife that folds into its handle and that can easily be carried in one's pocket.
This Court has the authority and obligation to devise an appropriate and just remedy,[10] especially under the circumstances *376 presented here, where the Legislature clearly intended that "pocketknives" be excepted from the definition of weapon. For that reason, I would follow the reasoning of the Oregon Court of Appeals in Harris and hold that section 790.001(13) should be read as excepting "pocketknives" from the definition of "weapon," rather than "common pocketknives," and remand the case with directions that the petitioner be ordered to be discharged.
KOGAN, C.J., concurs.
NOTES
[1] The statute reads: "A person shall not possess any firearm, electric weapon or device, destructive device, or other weapon on the property of any school, school bus, or school bus stop...." § 790.115(2), Fla. Stat. (1995).
[2] The Legislature has not defined the term "common pocketknife."
[3] "The fact that [the Legislature] might, without difficulty, have chosen `clearer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 87, 96 S.Ct. 316, 317, 46 L.Ed.2d 228 (1975).
[4] We note that neither the Attorney General nor this Court maintains that four inches is a bright line cutoff for determining whether a particular knife is a "common pocketknife." We merely hold that appellant's knife fits within the exception to the definition of weapon found in section 790.001(13). We decline to consider whether a pocketknife with a blade-length in excess of four inches can be considered a "common pocketknife."
[5] The single company Victorinox manufactures the following versions of its "Swiss Army" knife: "The Classic," "Classic with Pen," "Classic with Rosewood Handle," "Sterling Silver Classic," "Classic Star of David," "Vintage," "Swiss Champ," "Mini Champ," "Tinker," "Super Tinker," "Deluxe Tinker," "Camouflage Tinker," "Outward Bound Tinker," "Climber," "Deluxe Climber," "Camper," "Explorer," "Picnicker," "Hunter," "Huntsman," "Adventurer," "Hiker," "Fisherman," "Pioneer," "Fieldmaster," "Rucksack," "Ranger," "Soldier," "Spartan," "Recruit," "Pocket Pal," "Golfer," "Caddy," "Equestrian," "Waiter," "Craftsman," "Mechanic," "Electrician," "Time Keeper," "Super Timer," "Traveler's Set," "Money Clip Knife," "Ambassador," "Executive," and six versions with the Boy Scout logo. Most are manufactured with a choice of colors. The Knife Center of the Internet, The Knife Center Presents Victorinox (visited July 9, 1997) 

[6] In Brown, we held that the term "public housing facility" was unconstitutionally vague. 629 So.2d at 843. We reasoned that it was impossible to know what the Legislature intended to target by that term. Id. Like the term "common pocketknife" here, there are doubtless some circumstances in which it would be obvious that one is standing in a "public housing facility," yet we still held that the term was unconstitutionally vague.
[7] Such precision could have been established by the Legislature in this case, such as by drafting the statute to exclude from the definition of "weapon" any pocketknife with a blade-length of less than an objective and measurable length.
[8] The district court below declined to employ that option, instead reasoning that the term "pocketknife" alone is still too vague in light of the Legislature's failure to define that term. L.B., 681 So.2d at 1181 n. 3.
[9] The term "pocketknife" is clear in the generally understood meaning of the term. However, as noted earlier, the pocketknife is constructed in many varieties and sizes, making it difficult or impossible to know whether some pocketknives are "common."
[10] We have long recognized the general rule that "[a]n unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken." Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995) (quoting Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla.1974)).